UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ANTHONY TUCKER #206436, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   NO. 3:17-cv-00673 |
| | )   JUDGE CRENSHAW |
| DOCTOR RUDD, et al., | ) |
| | ) |
|     Defendants | ) |

## MEMORANDUM AND ORDER

Anthony Tucker, an inmate of the Rutherford County Adult Detention Center in Murfreesboro, Tennessee, has filed this *pro se* civil rights action under 42 U.S.C. § 1983 (Doc. No. 1), along with an application to proceed without prepaying fees and costs. (Doc No. 2.) The case is before the Court for a ruling on the application and for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

    **A.    APPLICATION TO PROCEED AS A PAUPER**

Under the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(a), a prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee of $350 required by 28 U.S.C. § 1914(a). Because it is apparent from Plaintiff's submission that he lacks the funds to pay the entire filing fee in advance, his application to proceed as a pauper (Doc. No. 2) is **GRANTED**.

Pursuant to 28 U.S.C. §§ 1915(b) and 1914(a), Plaintiff is nonetheless assessed the $350.00 civil filing fee. The Administrator of the Rutherford County Adult Detention Center, as custodian of Plaintiff's trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment,

the greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of the Plaintiff's preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10.00. 28 U.S.C. § 1915(b)(2). Payments shall continue until the $350.00 filing fee has been paid in full to the Clerk of Court. 28 U.S.C. § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the Administrator of the Rutherford County Adult Detention Center to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 801 Broadway, Nashville, TN 37203.

### B. INITIAL REVIEW OF THE COMPLAINT

Pursuant to 28 U.S.C. § 1915(e)(2), the Court is required to conduct an initial review of any complaint filed *in forma pauperis*, and to dismiss the complaint if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. In reviewing the complaint to determine whether it states a plausible claim, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." Tackett v. M & G Polymers, USA, LLC, 561F.3d 478, 488 (6th Cir. 2009) (citing Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). A *pro se* pleading must be liberally construed and

"held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

Plaintiff seeks to vindicate alleged violations of his federal constitutional rights under 42 U.S.C. § 1983. Section 1983 confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. Wurzelbacher v. Jones-Kelley, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the deprivation was caused by a person acting under color of state law." Tahfs v. Proctor, 316 F. 3d 584, 590 (6th Cir. 2003) (citations omitted).

Plaintiff alleges that around December 8, 2016,[1] he had a toenail that was "becoming ingrown" and hurting, so he asked for nail clippers, but was told that he had to wait for the barber. Plaintiff asked again for the nail clippers a week later, and was provided with clippers a few days after that. Plaintiff alleges that he cut the toenail, but that it was "a little infected" and looked bad, so he submitted an emergency sick call request. Plaintiff alleges that "a few days later . . . around 12/29/16,"[2] he saw a nurse who told him that, because he is diabetic, he would have to see the nurse practitioner about his toe. Plaintiff later saw someone who took a picture of his toe. On January 9, 2017, he saw someone else who did not look at his toe, which he alleges was "badly infected" by then, but cut the nail out of his finger (which was also infected) and put him on medication. On February 17, 2017, a nurse practitioner cut the nail out of Plaintiff's toe, tried to

---

[1] A grievance attached to the Complaint indicates that the trouble with his toe began on December 16, 2017. (Doc. No. 1, at 11.)

[2] According to a grievance attached to the Complaint, Plaintiff submitted his emergency request on December 31, 2016. (Doc. No. 1, at 10.)

3

"burn the growth of skin off," and put him on more medication. Plaintiff alleges that the procedure was painful. On February 27, 2017, a member of medical staff recommended that Plaintiff see a specialist. The recommendation was approved on February 28, and Plaintiff saw the doctor on March 10. The doctor performed a surgical procedure to treat Plaintiff's ingrown toenail. At a follow-up visit two weeks later, the doctor said the wound was healing well. According to Plaintiff, "[i]t took from December 8, 2016, till 3/10/2017," to get proper treatment for his toe. (Doc. No. 1, at 5.) Plaintiff also alleges that he has been routinely charged for his health care in jail, including emergency services and care for his chronic conditions, which he says violates 18 U.S.C. 4048(b) and Tenn. Code Ann. § 56-7-2355, and that he is "being treated like this deliberately" because of a previous lawsuit he filed. (Doc. No. 1, at 6.)

Plaintiff's allegations about the treatment he received for an ingrown toenail do not state a claim for deliberate indifference to his serious medical needs under the Eighth or Fourteenth Amendment.[3] The "deliberate indifference" necessary to violate the constitution is a higher standard than negligence and requires that the official ***know of and disregard*** an excessive risk to inmate health or safety. Farmer, 511 U.S. 825, 837 (1994). Deliberate indifference to a prisoner's serious medical needs "constitutes the unnecessary and wanton infliction of pain" and violates the Eighth Amendment. Ruiz v. Martin, 72 F. App'x 271, 275 (6th Cir. 2003) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Villegas v. Metro. Gov't of Nashville, 709 F.3d

---

[3] Plaintiff has not specified whether he is a pretrial detainee or a convicted inmate. That distinction is not significant to this analysis, because pretrial detainees have rights under the Fourteenth Amendment that are analogous to those provided to convicted prisoners by the Eighth Amendment. Miller v. Calhoun Cnty., 408 F.3d 803, 812 (6th Cir. 2005) ("Although the Eighth Amendment's protections apply specifically to post-conviction inmates, the Due Process Clause of the Fourteenth Amendment operates to guarantee those same protections to pretrial detainees as well."). The Supreme Court's decision that detainees have a lower burden than convicted inmates in excessive force cases, Kingsley v. Hendrickson, 135 S. Ct. 2466, 2472-73 (2015), has not been held to apply to deliberate indifference cases.

563, 570 (6th Cir. 2013). But mere claims of negligent treatment or medical malpractice do not amount to deliberate indifference. Estelle, 429 U.S. at 106. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976). To prevail under those circumstances, an inmate must establish that the treatment he received was "so woefully inadequate as to amount to no treatment at all." Ruiz, 72 F. App'x at 276 (quoting Westlake, 537 F.2d at 860 n.5).

Petitioner's toenail did not present a serious medical need until it became infected. Edwards v. Hynes, No. CV 316-019, 2016 WL 5844479, at *3 (S.D. Ga. Sept. 30, 2016), report and recommendation adopted, No. CV 316-019, 2016 WL 6821099 (S.D. Ga. Nov. 16, 2016), and report and recommendation adopted, No. CV 316-019, 2017 WL 235188 (S.D. Ga. Jan. 18, 2017) (acknowledging that an ingrown toenail can progress to serious infection, but holding that the plaintiff's toenail was not a serious medical need when it caused only itching, pain and a callous); accord Patterson v. Kim, No. 1:08-CV-873, 2009 WL 2982753, at *8 (W.D. Mich. Sept. 14, 2009) ("Plaintiff's alleged ingrown toenail and foot fungus are not 'serious medical needs' sufficient to support the objective component of an Eighth Amendment claim."); Marchwicz v. O'Mara, No. 11-CV-109-SM, 2011 WL 5571825, at *4 (D.N.H. Oct. 25, 2011), report and recommendation adopted sub nom. Marchwicz v. Hillsborough Cty. Dep't of Corr., No. 11-CV-109-SM, 2011 WL 5570634 (D.N.H. Nov. 16, 2011) ("[T]he court is unable to find a single case in which an ingrown toenail was deemed by a federal court to constitute a 'serious medical need' in a § 1983 action asserting inadequate medical care.") According to Plaintiff, once his toe became "a little infected" and he submitted his sick call request, he saw a nurse just "a few days later," and

5

was thereafter provided with two rounds of medication and a procedure to treat his toenail between then and when he was approved to see a specialist approximately two months later. Neither the slight delays nor the attempts at more conservative treatment before Plaintiff was taken to a specialist constitute such woefully inadequate care as to amount to none at all.

With regard to the medical charges, the Constitution does not prohibit charging inmates a fee for health care services, as long as indigent inmates are provided with necessary service regardless of their ability to pay. White v. Correctional Medical Services, Inc., 94 Fed.Appx. 262, 264 (6th Cir. 2004). The statutes on which Plaintiff relies for this claim regulate the health care charges imposed on federal inmates and detainees (Federal Prisoner Health Care Copayment Act of 2000, 18 U.S.C. 4048)[4] and Tennessee's mandated coverage provisions for health insurers and health benefit plans (Tenn. Code Ann. § 56-7-2355), but do not pertain to the fees that may be charged to state or local inmates by the local jail in which Plaintiff is incarcerated. The documentation Plaintiff attaches to his complaint indicates that the charges assessed against him are in compliance with the jail's policy, and one of his own grievances on the matter asserts that staff is "charging *us* for everything," and not singling him out for medical charges. (Doc. No. 1, at 12, 14 (emphasis added).) Accordingly, the charges do not constitute the "adverse action" necessary to state a claim for retaliation. See Tankesly v. Corr. Corp. of Am., No. 3:14-00911, 2014 WL 4657481, at *5 (M.D. Tenn. Sept. 17, 2014), report and recommendation adopted, No. 3:14-CV-00911, 2014 WL 5488759 (M.D. Tenn. Oct. 29, 2014) (holding that plaintiff did not state a claim for retaliation because sick call charges, which were pursuant to policy and not unconstitutional, were not adverse action); see also Hill v. Lappin, 630 F.3d 468, 472 (6th Cir.

---

[4] Section 4048 applies to "prisoners" incarcerated in a Federal Bureau of Prisons (BOP) facility, or individuals designated by the BOP Director as "charged with or convicted of an offense against the United States." 18 U.S.C. 4048(a)(5)(a) and (b). Plaintiff has not alleged that he has been so designated.

2010) (holding that retaliation claim required inmate to show that: 1) he engaged in protected conduct; 2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) there is a causal connection between elements one and two, i.e., the adverse action alleged was motivated at least in part by the plaintiff's protected conduct).

### C. CONCLUSION

Accordingly, this action is **DISMISSED** for failure to state a claim upon which relief can be granted. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. Any appeal of this Order would not be in good faith as required by 28 U.S.C. § 1915(a)(3).

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE